UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 08 B 05230 |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V., | ) ) | |
| | ) | Judge Bruce W. Black |
| Debtor. | ) ) ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. DE C.V. | ) ) | Adv. No. 08 A 00177 |
| | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | |
| WACHOVIA BANK, N.A. | ) ) | |
| Defendant. | ) ) ) | |

### Memorandum Opinion

This adversary proceeding is before the court on the defendant's motion for summary judgment. The plaintiff, Casa de Cambio Majapara S.V. de C.V. ("Majapara" or "the Debtor") seeks to avoid and recover, pursuant to sections 547 and 550 of the Bankruptcy Code,[1] transfers made for the benefit of the defendant, Wachovia Bank, N.A. ("Wachovia"). The legal issue presented is whether prejudgment attachments Wachovia obtained in New York and Illinois are subject to the safe harbor in section 546(g). For the reasons set forth below, the court concludes that Wachovia's prejudgment attachments are protected by the safe harbor in section 546(g). Accordingly, the defendant's motion will be granted.

---

[1] 11 U.S.C. §§ 101 ff. Any reference to "section" or "Code" is a reference to the Bankruptcy Code unless another reference is stated.

**Jurisdictional Statement**

The court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

**Background**

The Debtor and Wachovia agreed to a series of seven foreign exchange spot transactions (the "FX agreements")[2] on December 5, 2007, under which Wachovia agreed to deliver a total of 26 million Euros to the Debtor in exchange for $38,132,700 from the Debtor. The FX agreements were to settle on December 7, 2007. That date Wachovia delivered 26 million Euros to the Debtor, but the Debtor failed to deliver $38,132,700 to Wachovia.

On December 14, 2007, Wachovia filed an action against the Debtor in the United States District Court for the Southern District of New York (the "New York Action"), seeking prejudgment relief. On the same date, Wachovia sought similar relief against the Debtor in the Circuit Court of Cook County, Illinois (the "Illinois Action"). On December 14, 2007, Wachovia obtained an order of attachment in the Illinois action (Harris bank as garnishee), and on December 20, 2007, Wachovia obtained an order of attachment in the New York Action (Citibank as garnishee).

The Debtor filed for Chapter 11 bankruptcy on March 5, 2008. The Debtor filed its adversary complaint against Wachovia on March 24, 2008, requesting that the court declare both

---

[2] The parties agree that a foreign exchange transaction is a transaction in which one party agrees to deliver an agreed amount of one currency to a second party in exchange for the second party agreeing to deliver an agreed amount of a different currency to the first party. They further agree that a foreign exchange spot agreement is a foreign exchange transaction which by its terms will settle within two business days.

orders for prejudgment attachment avoidable preferences pursuant to section 547(b). Wachovia answered the complaint, asserted an affirmative defense based on section 546(g), and filed the present motion for summary judgment on that basis. Wachovia seeks summary judgment on the complaint under Rule 7056 of the Federal Rules of Bankruptcy, Rule 56 of the Federal Rules of Civil Procedure, and section 546(g), claiming that the prejudgment attachments are transfers to a swap participant in connection with swap agreements, thus not avoidable under section 547(b). The Debtor maintains that the prejudgment attachments were not "in connection with" the swap agreement and that section 546(g) is inapplicable because the prejudgment attachments are not the type of transfers contemplated by the safe harbor provided by section 546(g).

### Discussion

The legal issue before this court is whether the prejudgment attachments Wachovia obtained in New York and Illinois are subject to the safe harbor provision in section 546(g). Section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case." If Wachovia's attachments are within the safe harbor, then the attachments are outside the Debtor's avoidance powers, the motion for summary judgment must be granted, and judgment entered against the plaintiff. On the other hand, if the attachments are not protected by the safe harbor provisions of section 546(g), the Debtor can proceed with this avoidance action.

There are no genuine issues of material fact. The parties agree that the FX agreements are "swap agreements" as defined in section 101(53B) and that both the plaintiff and defendant are "swap participants" as defined in section 101(53C).

To prevail on its motion, Wachovia must show that the prejudgment attachments were (1) transfers, (2) made by or to (or for the benefit of) a swap participant, (3) under or in connection with any swap agreement, and (4) made before the commencement of the case. Section 546(g). The second and fourth elements of section 546(g) are not in dispute. For the reasons stated below, the court concludes that the other two elements have been shown and that the defendant is entitled to judgment as a matter of law.

This case presents an issue of first impression. No cases have addressed this specific issue, and only one case provides slight guidance. The plaintiff cites *In re Interbulk, Ltd.*, 240 B.R. 195 (Bankr. S.D.N.Y. 1999) to support its argument that Wachovia's prejudgment attachments are not "under or in connection with" a swap agreement, as required under the provisions of section 546(g). However, that case offers little support for the plaintiff's argument and in many ways undermines its position. In *Interbulk*, the court held that an attachment was not subject to section 546(g) because it was not obtained "according to the method prescribed in the agreement itself," and therefore, was not obtained "under" a swap agreement. *Id.* at 202. The court did not even consider whether the attachment was "in connection with a swap agreement" because at the time of the *Interbulk* case section 546(g) required that a transfer be both "under" *and* "in connection with a swap agreement." In considering the plain meaning of "under" and "in connection with," the court held that a transfer is "under" a swap agreement "when it is accomplished according to the method prescribed by the agreement itself." *Id.* As for "in connection with," the court stated the phrase "suggests a broader meaning similar to 'related to'." *Id.* The *Interbulk* court held that the attachment in that case was not subject to section 546(g)'s safe harbor because it concluded that the attachment was not a transfer "under"

- 4 -

the swap agreement. The court did not need to consider whether the attachment was a transfer "in connection with" the swap agreement.

Since the *Interbulk* opinion was issued, section 546(g) has been substantially amended. The section now has a broader application because it only requires that the transfer be "under **or** in connection with any swap agreement" rather than under a swap agreement **and** in connection with a swap agreement. Section 546(g) (emphasis added). *Interbulk* offers little support for the plaintiff's argument applied to the present language of section 546(g) because the reach of the statute was broadened when Congress decided to make transfers "under" *or* "in connection with" a swap agreement subject to the safe harbor provision. This intention is clear in light of the fact that Congress changed "under **and** in connection with" to "under **or** in connection with," not only retaining the phrase "in connection with," but making it disjunctive to "under." Unlike the *Interbulk* case, this court's analysis cannot end simply because the prejudgment attachments were not "under" the swap agreement.³ Instead, this court must also determine whether the prejudgment attachments were "in connection with a swap agreement."

The Debtor argues that even under the more inclusive language in the current statute the prejudgment attachments are not "in connection with a swap agreement." Rather, the Debtor asserts, "[t]hey were made in connection with Wachovia's *ex parte* and false statements to two different courts to the effect that the Debtor had and/or was going to fraudulently conceal or transfer assets in order to hinder or delay its creditors." (Plaintiff's Response in Opposition at 8).

The fallacy in the Debtor's position is that it is premised on the idea that attachments could only be "in connection with" one subject- either the swap agreements or the accusations by Wachovia of potential wrongdoing by the Debtor. To the contrary, this court concludes that the

---

³ The parties and the court accept the analysis of *Interbulk*: "A natural reading of 'under' would suggest that a transfer will be under a swap agreement when it is accomplished according to the method prescribed in the agreement itself." *Interbulk*, at 202.

prejudgment attachments were made "in connection with" both the swap agreements, which furnish the ultimate basis for the Debtor's liability to Wachovia, and the allegations justifying the prejudgment attachment remedy.

The Debtor's argument also fails because both the New York and Illinois attachments were based at least in part on the merits of the case. *See* Illinois Order for Attachment and Summons dated December 14, 2007 ("The Plaintiff...established by affidavit a prima facie case") and New York Order of Attachment dated December 20, 2007 ("it is probable that Wachovia will succeed on the merits and recover that sum from Majapara"). Moreover, even if the attachments were not obtained based on the merits of the case, they would still be "in connection with" the swap agreement because the actions taken by Wachovia stem from the failure of those transactions. This court concludes that the prejudgment attachments were substantially related to the swap agreement and therefore were "in connection with" the swap agreement.

The Debtor also argues that the prejudgment attachments were "not made to or for the benefit of Wachovia **in its capacity as a swap participant**." (Plaintiff's Response in Opposition at 8) (emphasis added). This argument fails because it adds a requirement- "in its capacity as"- that does not appear in the statute. Section 546(g) is addressed to transfers "to a swap participant" without qualifiers of any kind.

The remaining issue raised by the Debtor is whether a prejudgment attachment is a "transfer" for purpose of section 546(g). Although the Debtor concedes that a post-judgment attachment would be considered a transfer for purposes of section 546(g), it argues that a prejudgment attachment is "not the type of transfer that is fairly characterized as a transfer in connection with a swap agreement." (Plaintiff's Response in Opposition at 4). Most of this

argument centers around legislative intent and the purposes for enactment of section 546(g). The argument fails because this court will not consider the legislative history behind section 546(g) because that statute is clear and unambiguous. *Cf. Interbulk* at 202.

The Bankruptcy Code defines the term "transfer" very broadly in section 101(54). Specifically, section 101(54)(D)(ii) states that the term "transfer" means "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with (i) property; or (ii) an interest in property." The definition makes no distinction between prejudgment and post-judgment transfers. Here, Wachovia obtained its prejudgment attachments subject to the final adjudication of the case. This court concludes that such conditional transfers fall under the broad definition of transfer in the Bankruptcy Code.

Even more significantly, the Debtor conceded that Wachovia's prejudgment attachments constitute "transfers" when it filed the adversary complaint. The complaint was filed pursuant to section 547(b) which permits avoidance of certain "transfer[s]." The Debtor's argument here is inconsistent with its previous filings and fails regardless of this court's conclusion on the issue. Even if the court agreed with the Debtor and concluded that the prejudgment attachments were not "transfers," the defendant would still prevail because without a transfer the Debtor has no cause of action pursuant to section 547(b). The court, however, disagrees with the Debtor and concludes that the broad definition of transfer in the Bankruptcy Code includes the prejudgment attachments obtained in New York and Illinois.

### Conclusion

The plain language section 546(g) states that the Debtor "may not avoid a transfer, made by or to (or for the benefit of) a swap participant or financial participant, under or in connection

with any swap agreement and that is made before the commencement of the case." The term "transfer" is broadly defined in section 101(54) and includes prejudgment attachments. Here, there is no dispute over the fact that Majapara and Wachovia entered into a series of foreign exchange spot transactions and that these transactions are swap agreements. There is also no dispute that the actions taken by Wachovia stem from the failure of those transactions. Although there may have been additional causes of actions in Wachovia's attachment complaints, such as breach of contract and fraud, the fact is that the Wachovia obtained the attachments in connection with its swap agreements with Majapara. Therefore, Wachovia's pre-bankruptcy actions were transfers made to a swap participant in connection with a swap agreement and are outside the Debtor's avoidance powers. For these reasons, the defendant's motion is GRANTED. Judgment will be entered in favor of the defendant on all counts. This Memorandum Opinion will constitute findings of fact and conclusions of law. A separate judgment will be entered.

DATED: July 9, 2008                          ENTERED:

                                             /s/ Bruce W. Black
                                             Bruce W. Black
                                             Bankruptcy Judge